CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
for Danville
DEC 19 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DIANA W. COBBS, | ) | CASE NO. 4:12CV00011 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's August 20, 2010 protectively-filed applications for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The question presented is whether the Commissioner's final decision is supported by substantial evidence. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING plaintiff's motion for summary judgment and GRANTING the Commissioner's motion for summary judgment.

In a decision dated September 22, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since February 24, 2005, her alleged date of disability onset.[1] (R. 18.) The Law Judge determined plaintiff's right arm

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which was December 31, 2010. See 20 C.F.R. § 404.131(a); (R. 18.)

1

difficulty,[2] mild carpal tunnel syndrome, mild degenerative disc disease, and obesity were severe impairments. (R. 18.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 19.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform light work except that she was limited to no more than occasional fine or gross manipulation with her right hand and pushing or pulling with both arms.[3] (R. 19.)

The Law Judge relied on portions of the testimony of Dr. Andrew Beale, a vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 26-27, 55-63.) Based on this testimony, the Law Judge determined that, while plaintiff was unable to perform her past relevant work as a textile industry stuffer/filler or part-time security guard, she could perform a range of light work which was available to her as a ticket taker, lobby attendant, or laundry sorter. (R. 26-27, 57-60.) The Law Judge found plaintiff not disabled under the Act.

Plaintiff appealed the Law Judge's September 22, 2011 decision to the Appeals Council. (R. 1-7.) In its March 5, 2012 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. (*Id.*) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant.

---

[2] The record reflects that plaintiff suffered a work-related injury to her right extremity in 2005. (See, e.g., R. 331.)
[3] Sedentary work is defined in 20 C.F.R. § 404.1567(a) as involving lifting no more than 10 pounds at a time with occasional lifting or carrying of objects such as files or small tools. A job in this category involves sitting, though a certain amount of walking or standing is often necessary.

2

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642.

Plaintiff asserts that the Law Judge improperly assessed her credibility, including her complaints of pain, improperly relied on VE testimony that was inconsistent with the Dictionary of Occupational Titles (DOT), and erred in not ordering a consultative physical exam, and that his finding that plaintiff was capable of light work is not supported by substantial evidence. (Dkt. No. 15, at 9-14.)

Plaintiff contends that the medical evidence of record corroborates her complaints that her right arm impairment significantly limits her function, and, thus, the Law Judge's credibility findings are not supported by substantial evidence.[4] Here, the Law Judge found that plaintiff's right arm difficulty was a severe impairment and that her medically determinable impairments reasonably could be expected to produce some of her alleged symptoms. (R. 18, 20.) However, he concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects were not credible to the extent they were inconsistent with his RFC assessment. (R. 20.)

---

[4] Plaintiff did not contest the Law Judge's findings regarding the credibility of her other severe impairments.

3

This finding is supported by substantial evidence for several reasons. In reviewing a claimant's subjective allegations of the intensity and limiting effects of her condition, the Law Judge was entitled to consider all evidence of record, including the claimant's testimony, medical records, the claimant's daily activities, and the nature of her treatment. 20 C.F.R. § 404.1529(c). While a claimant need not provide objective evidence in support of her subjective allegations, the absence of objective evidence can bear on whether her allegations are found credible. *Hines v. Barnhart*, 453 F.3d 559, 564-565 (4th Cir. 2006). Here, the Law Judge pointed out that no treating physician ever found an objective cause for plaintiff's continuing pain, and that two have opined that she is not as limited as she alleges. (R. 20-23.) He noted further that numerous and extensive diagnostic tests have been normal and that all plaintiff's doctors have considered her able to work to some degree. (R. 20-25.) As explained below, these findings, as well as his other concerns about crediting plaintiff's complaints, are supported by substantial evidence.

Plaintiff alleged that she became unable to work when she suffered a job-related injury to her right hand in February 2005. (R. 20.) She was first treated by Dr. Jacob Moll, M.D., who noted her right hand had slight swelling of the dorsum, two non-bleeding abrasions on the volar aspect, a weaker grip, and some pain (R. 250.) However, she presented with no numbness or tingling and no pain in the radius or ulna and pain only around the abrasions. (*Id.*) On March 1, 2005, Dr. Moll returned the plaintiff to light duty, noting no more swelling of the dorsum and that the abrasions had "completely healed," although there was a slight generalized swelling of the wrist and positive Tinel's and Phalen's signs. (R. 248.) At her follow-up on March 22, 2005, Dr. Moll noted no erythema or generalized swelling in the wrist, that Tinel's and Phalen's were both negative, and that there was no numbness or tingling in the right hand, though there was

4

slight weakness and slight thenar swelling. (R. 242.) He planned to have her return in fourteen days for "probable release." (*Id.*)

During her follow-ups in April 2005, Dr. Moll noted that all of the swelling had healed and only some point tenderness over the wrist and pain at the radial head of the right elbow, as well as pain when gripping, remained. (R. 237.) Plaintiff's x-rays in March and April were normal. (R. 252-255.) In May 2005, Dr. Moll referred the plaintiff to an orthopedist, Dr. Ada Cheung. (R. 273-274.) Dr. Cheung assessed the plaintiff with right wrist pain, possible carpal tunnel syndrome, and right elbow lateral epicondylitis, referring her for nerve conduction and EMG studies by Juan Cuebas, M.D., and then for an MRI. (R. 270-273.) While the nerve conduction studies showed evidence of symmetric bilateral carpal tunnel syndrome, the MRI was normal. (R. 269-271.) Dr. Cheung injected plaintiff with a cortisone shot on June 15, 2005, and referred her to physical therapy. (R. 269, 271.) While no further records for Dr. Cheung are available, the record demonstrates that Dr. Cuebas saw the plaintiff in October, at which point plaintiff complained of finger numbness and a tremor. (R. 330.) A second nerve conduction study revealed that plaintiff suffered "very mild bilateral" carpal tunnel syndrome which the doctor believed was probably responsible for her symptoms. (R. 335.) However, Dr. Cuebas went on to observe that, "[e]lectrically, her CTS seems to be improving, although I don't quite understand why she continues to have all this discomfort so long after an injury that has failed to yield objective evidence." (*Id.*)

On March 16, 2006, Plaintiff returned to see Dr. Moll alleging that she was unable to use her hand, though Dr. Moll noted that "there [wa]s no evidence of any muscle atrophy from non-use."[5] (R. 230.) Dr. Moll further opined that plaintiff had reached maximum medical

---

[5] In both March and April of 2006, Dr. Moll filled out a form releasing plaintiff to return to work on an "8 or 12 Hours" basis with restricted use of her right hand. (R. 229, 234.)

5

improvement, but followed up with her in April, May, and June. (R. 224-228.) In May, Dr. Moll noted slight swelling of the thenar eminence, and in June there was slight swelling in the dorsum as well; however, there continued to be no evidence of muscle atrophy. (R. 224, 226.) In October 2006, plaintiff followed up with her primary care physician, Michael Waters, M.D., who noted that she had a right hand injury, reflex sympathetic dystrophy, carpal tunnel syndrome, tremor, hypertension, and obesity. (R. 221.) Dr. Waters referred the plaintiff to Eduardo Fraifeld, M.D., a specialist at the Pain Clinic. (R. 319.) In November 2006, Dr. Fraifeld observed that the plaintiff failed to cooperate with testing, noting that "patient was not resisting me but was actually moving her hands to separate out her fingers." (R. 322.) Dr. Fraifeld opined that plaintiff did not suffer from reflex sympathetic dystrophy, that her tremor appeared to be under her control, and that he would not be surprised if plaintiff suffered a "component of somatoform or conversion reaction." (R. 321-322 at 322.)

In December 2006, Dr. Fraifeld found no abnormalities on testing, opined that plaintiff suffered a component adjustment disorder, and recommended continued psychotherapy together with a scheduled three phase bone scan. (R. 265-267.) In January 2007, Dr. Fraifeld reported that the bone scan was entirely negative, that there was no evidence other than very slight edema of the hand, and that plaintiff was at "maximum medical intervention." (R. 318.) In February 2007, Dr. Fraifeld noted that the plaintiff appeared "quite upset because I released her to full duty work," and he suggested that she find another physician. (R. 316-317.) In May 2007, both Dr. Moll and Dr. Fraifeld wrote letters for use in plaintiff's worker's compensation proceedings. Having been shown a video of plaintiff using her right hand, both doctors opined that plaintiff did not have any functional limitations and was able to use her right hand normally. (R. 259-263.)

6

Dr. Waters, plaintiff's primary physician, referred plaintiff to Danville Neurology Associates in September 2007, where she was treated by Rafeal Hurtado, M.D., and Victor Owusu-Yaw, M.D. (R. 315). In October 2007, Dr. Hurtado noted that there was no edema in the right hand or the right upper extremity, no color changes or temperature differences between the right upper or right lower extremity, and that plaintiff appeared to have at least moderate control over her tremor. (R. 312.) Dr. Hurtado stated that "the possibility of reflex sympathetic dystrophy . . . would only be based on the subjective complaint of this patient," and that there "continues to be a question of concern about non-organic elements, including malingering or conversion reaction." (R. 311.) Dr. Hurtado prescribed a Catapres patch and clonazepam, but was not enthusiastic about plaintiff's response. (R. 311.) When the plaintiff returned in January 2008, she had not taken the medications, and Dr. Hurtado referred her to Dr. Goli at Duke University Medical Center. (R. 307-309.)

Plaintiff did not keep her May 2008 appointment with Dr. Goli, but returned to Danville Neurology Associates in February 2009 and was treated by Dr. Owusu-Yaw. Dr. Owusu-Yaw reported that the plaintiff's extremities appeared normal, but that she complained of pain and a functional tremor. (R. 305.) At a follow-up in August 2009, Dr. Owusu-Yaw noted that the plaintiff had full strength throughout, normal deep tendon reflexes, normal sensation, and normal coordination. (R. 304.) Dr. Owusu-Yaw diagnosed plaintiff as suffering "pain in the right upper extremity, post traumatic situation; functional tremor of the right upper extremity; and mild carpal tunnel syndrome based on electrodiagnostic testing without clear symptomatology except for dropping things from the hand." (R. 304.) In August 2010, Dr. Owusu-Yaw reported that the plaintiff had some weakness in her hand and arm and he prescribed Lyrica. (R. 302.) In October 2010, the doctor observed that the plaintiff had full strength with normal tone and bulk, no

7

abnormal movements, and normal sensation. Apparently Lyrica was helping and the functional tremor was not noted. (R. 367.) No functional tremor was present at the follow-up examinations by Dr. Owusu-Yaw in January and May of 2011. (R. 380, 383.)

It is apparent to the undersigned that with the plethora of normal objective findings and with the doubts expressed by some of plaintiff's treating physicians about whether plaintiff's medical impairment was as severe as she claimed, there is substantial treating evidentiary support for the Law Judge's determination to only partially credit her subjective complaints concerning the extent, intensity, and effects of her alleged pain. The resulting RFC, therefore, also is supported by substantial evidence.

Plaintiff also challenges the Law Judge's decision to rely on the testimony of the VE, asserting that such testimony was in conflict with applicable provisions of the Dictionary of Occupational Titles (DOT), application of which would have altered the outcome of the case. In that regard, the VE testified that there were a substantial number of unskilled, light work jobs which could be performed by a person who was limited to only occasional use of both hands. (R. 56-60.) These jobs included lobby monitor, which has an SVP of 3 and, therefore, is considered a semi-skilled job. (R. 57-58.) The VE was asked whether his testimony was "consistent with the information found" in the DOT. (R. 57.) The VE stated that it was and offered that plaintiff's work background would allow her to learn any skills necessary for the jobs he mentioned in "30 days or less," which, in turn, would qualify her for the jobs. (R. 57-58.)

The Law Judge found that the testimony of the VE and the information contained in the DOT were consistent, except to the extent that the VE testified the security work identified was classified semiskilled. He found that the work could be learned in 30 days based on the experience of the VE, thus reconciling the testimony of the VE and the DOT under Social

8

Security Ruling ("SSR") 00-4p. (R. 27.) Under SSR 00-4p, the Law Judge need only provide a reasonable explanation for relying on the vocational evidence. Clearly the VE provided an explanation on which, under the circumstances of this case, the Law Judge could rely. Therefore, the Law Judge did not err in relying on the VE's testimony to find that the plaintiff was not disabled.[6]

Plaintiff also contends that the Law Judge erred in not ordering a consultative physical examination (CE) to resolve the alleged inconsistencies. Certainly, under the regulations, a Law Judge may order a CE pursuant to 20 C.F.R. § 404.1519a. The purpose of a CE is "to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient." *Id.* Although the Law Judge did not state his reasons for declining to order a CE, his decision not to do so was far from erroneous. The record contains a treatment history spanning over six years. The undersigned has recited significant portions of it which substantially support the Law Judge's observation that "numerous and extensive diagnostic testing has been normal." (R. 23.) While plaintiff was found to suffer a severe hand impairment under the regulations, the primary inconsistencies relating to her functional capacity were between her and her treating physicians. Almost to a person, the treating doctors appeared perplexed about the severity of her complaints because they did not match results from objective testing and physical examinations. Not one provided any opinion that plaintiff was disabled, only that she suffered some limitations in performing the work she had been performing at the time of her industrial accident. Therefore, the undersigned does not find that Law Judge committed error in declining to order a CE.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment and DENYING plaintiff's motion.

---

[6] Even if the Law Judge had chosen not to accept the VE's explanation, the VE's testimony regarding the availability of ticket taker and laundry sorter jobs would support a finding that plaintiff was not disabled.

9

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: *[signature]*
U.S. Magistrate Judge

12/19/2012
Date

10

Case 4:12-cv-00011-JLK-BWC   Document 21   Filed 12/19/12   Page 10 of 10   Pageid#: 465